BOSTON GAS COMPANY vs. CITY OF NEWTON.

Suffolk. April 7, 1997. - August 14, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, & FRIED, JJ.

*Constitutional Law,* Home Rule Amendment. *Municipal Corporations,* Home
rule, By-laws and ordinances, Fees. *Public Utilities,* Energy company. *Gas
Company.*

A city ordinance assessing a fee on public utilities as a prerequisite to acquir-
ing a permit to excavate public ways and sidewalks, for the purpose of
recovering future maintenance costs on account of the reduction in the use-
ful life of a street caused by such excavations, was inconsistent with the
provisions of G. L. c. 164, § 70, and thus was invalid under § 6 of art. 89
of the Amendments to the Massachusetts Constitution. [699-701]
A city ordinance assessing a fee on public utilities as a prerequisite to acquir-
ing a permit to excavate public ways and sidewalks, for the purpose of
reimbursing the city for costs incurred in inspecting the excavation sites,
was inconsistent with the provisions of G. L. c. 164, § 70, and thus was
invalid under § 6 of art. 89 of the Amendments to the Massachusetts
Constitution. [701-706]
A city ordinance assessing a fee on public utilities as a prerequisite to acquir-
ing a permit to excavate public ways and sidewalks, for the purpose of
reimbursing the city for its costs in processing permit applications, is not
inconsistent with G. L. c. 164, § 70. [706-707]

CIVIL ACTION commenced in the Superior Court Department on
September 11, 1992.

The case was heard by *Gordon L. Doerfer,* J., on motions for
summary judgment.

The Supreme Judicial Court granted an application for direct
appellate review.

*Steven W. Phillips (Michael I. Joachim* with him) for the
plaintiff.

*Frances E. Balin,* Assistant City Solicitor, for the defendant.

The following submitted briefs for amici curiae:

*Scott Harshbarger,* Attorney General, & *Thomas A. Barnico,*
Assistant Attorney General, for the Department of Public Utili-
ties.

*Paul K. Connolly, Jr., & Eileen M. Fava* for the Massachusetts Natural Gas Council.

*Albert S. Robinson*, Town Counsel, & *James A. Goodhue* for the town of Wellesley.

*David M. Moore* for the Massachusetts Municipal Association.

LYNCH, J. The plaintiff filed an action for declaratory relief pursuant to G. L. c. 231A, arguing that § 26-11 of the Revised Ordinances of Newton, as amended by Newton Ordinance No. T-161, was preempted by State law and constituted an improper tax. On cross motions for summary judgment, a Superior Court judge allowed the city of Newton's (city) motion. The plaintiff appealed. We granted the city's application for direct appellate review.

The following facts are undisputed. The ordinance at issue imposes a monetary cost on public utility companies such as the Boston Gas Company as a prerequisite to acquiring a permit to excavate public ways and sidewalks in the city. Under the ordinance, a party seeking a permit to excavate a public way is charged an application fee of $25. In addition, for an excavation of one hundred square feet or less, an "Inspection and Maintenance" fee of $150 is imposed. For each additional one hundred square feet or portion thereof, an additional $50 is charged. The ordinance also imposes an inspection and maintenance fee of $50 for "shut-off holes" and a fee of $10 each for "corings."[1] The city based the charges on the costs it incurs in issuing permits and in inspecting the excavations. The city maintains that the fee structure also takes into account the reduction in the useful life of streets and sidewalks caused by openings into their surfaces.[2, 3]

The plaintiff contends that the ordinance is invalid under § 6 of art. 89 of the Amendments to the Massachusetts Constitution

---

[1]Shut-off holes are openings of approximately one square foot. Corings are small, deep openings of approximately two inches in diameter.

[2]According to the city, the life expectancy of a street is reduced by twenty-five per cent by street openings. The city therefore calculated that the reduced life expectancy added $15.25 per year per one hundred square feet to the city's cost of maintaining its roadways.

[3]The city also points out that inspection and maintenance fees for street openings are waived if a particular street is scheduled for reconstruction or resurfacing later in that calendar year or if the street is under construction at the time of the permit request.

(Home Rule Amendment) because it is inconsistent with G. L. c. 164, the State's regulatory scheme for public utilities, including gas companies, and regulations of the Department of Public Utilities (department).[4] We agree that the portion of the ordinance charging inspection and maintenance fees is invalid; we conclude, however, that the city is entitled to charge a fee based on its administrative costs incurred in the issuance of permits.

*Discussion.* Municipalities may not adopt by-laws or ordinances that are inconsistent with State law. *Boston Gas Co.* v. *Somerville,* 420 Mass. 702, 703 (1995), and cases cited. "To determine whether a local ordinance is inconsistent with a statute, this court has looked to see whether there was either an express legislative intent to forbid local activity on the same subject or whether the local regulation would somehow frustrate the purpose of the statute so as to warrant an inference that the Legislature intended to preempt the subject." *Id.* at 704. Accord *Bloom* v. *Worcester,* 363 Mass. 136, 155 (1973). "Moreover, in some circumstances we can infer that the Legislature intended to preempt the field because legislation on the subject is so comprehensive that any local enactment would frustrate the statute's purpose." *Boston Gas Co.* v. *Somerville, supra.* Accord *Wendell* v. *Attorney Gen.,* 394 Mass. 518, 527-528 (1985); *New England Tel. & Tel. Co.* v. *Lowell,* 369 Mass. 831, 834-835 (1976). We have stated that the purpose of G. L. c. 164 is to ensure uniform and efficient utility services to the public. *Boston Gas Co.* v. *Somerville, supra* at 706. See *New England Tel. & Tel. Co.* v. *Lowell, supra* at 834 (emphasizing "the desirability of uniformity of standards applicable to utilities regulated by the Department of Public Utilities"). We consider, therefore, whether the ordinance, which imposes a fee based on three separate considerations, is inconsistent with G. L. c. 164, such that it interferes with uniform and efficient utility services.

*Maintenance.* General Laws c. 164, § 70, imposes an affirmative obligation on the plaintiff to restore all streets, lanes, and highways to the condition they were in prior to being

---

[4]The Home Rule Amendment states, "[a]ny city or town may, by the adoption, amendment, or repeal of local ordinances or by-laws, exercise any power or function which the general court has power to confer upon it, which is not inconsistent with the constitution or laws enacted by the general court . . . ." Art. 89, § 6, of the Amendments to the Massachusetts Constitution.

opened.[5] The ordinance, however, assesses a fee based on the city's calculation that street life is reduced twenty-five per cent by excavations. While the city argues that it is entitled to recover such future costs as property damage under G. L. c. 164, § 75,[6] the logical corollary of the city's argument is that it is all but impossible for the plaintiff to restore a street that has been the site of an excavation to its former condition and the plaintiff must therefore be made to pay for the diminished value. This assumption is contrary to that of the Legislature because the statute assumes that a street can and should be restored to its former condition. See G. L. c. 164, § 70. Therefore, imposing a cost on the plaintiff based on the reduction in street life caused by the excavation is inconsistent with the statute. See *Boston Gas Co.* v. *Somerville, supra* at 705 (requirement of ordinance that plaintiff maintain excavation site for three years inconsistent with statute); *Seltzer* v. *Amesbury & Salisbury Gas Co.*, 188 Mass. 242, 244 (1905) (construing predecessor to G. L. c. 164, § 70, and stating that "the statute has reference simply to a temporary condition of things, existing while the work is going on, and extending only so long as may be reasonably necessary to put the road in its former condition"). Indeed, despite the fact that this charge must be paid at the time the permit is sought, it is inescapable that the cost the city seeks to impose will be incurred in the future.[7] By demanding that the plaintiff, through an upfront fee, in effect pay for the long-term

[5]General Laws c. 164, § 70, provides: "A gas company may, with the written consent of the aldermen or the selectmen, dig up and open the ground in any of the streets, lanes, and highways of a town, so far as necessary to accomplish the objects of said corporation; but such consent shall not affect the right or remedy to recover damages for an injury caused to persons or property by the acts of such corporation. It shall put all such streets, lanes and highways in as good repair as they were in when opened, and upon failure to do so within a reasonable time, shall be guilty of a nuisance."

[6]General Laws c. 164, § 75, provides: "The aldermen or selectmen may regulate, restrict and control all acts and doings of a corporation subject to this chapter which may in any manner affect the health, safety, convenience or property of the inhabitants of their towns."

[7]The city argues that the plaintiff did not raise below the argument that the ordinance mandates the plaintiff to perform duties in excess of those defined by G. L. c. 164, § 70, by requiring the plaintiff to become involved in the long-term maintenance of roadways and has moved to strike this portion of the plaintiff's brief. We conclude that the plaintiff did properly raise this argument. Indeed, in the plaintiff's memorandum of law in support of summary judgment and its opposition to the city's cross motion for summary judgment, the plaintiff pointed out that a gas company need only put its street openings

maintenance of the street, the ordinance mandates something not required by the statute and is, therefore, inconsistent with, and preempted by, G. L. c. 164.[8] See *Wendell* v. *Attorney Gen.*, *supra* at 528-529 (holding by-law inconsistent because it imposed conditions beyond those established by statute and exceeded authority of town's board of health); *New England Tel. & Tel. Co.* v. *Lowell*, *supra*.

*Inspection.* The city also argues that, even if the portion of the fee attributable to the reduction in street life is eliminated, costs incurred by the city in inspecting the excavation sites justify the fee. Thus, according to the city, the fees are reasonable regardless of whether the city permissibly may charge the plaintiff for the reduction in street life and are impliedly authorized by the statutory and regulatory scheme. We disagree.

In mandating that public utilities restore a street or highway to the condition it was in prior to any excavation, we believe that the statute can be fairly read as placing the burden of fulfilling such statutory duties squarely on the shoulders of the public utility. See G. L. c. 164, § 70. The statute implies, therefore, that the plaintiff, not the city, has the obligation to inspect excavation sites after the necessary repairs have been made. Moreover, the statute vests with the department, not the city, the authority to oversee the plaintiff and to ensure the safe and efficient distribution of gas. Where excavation is necessary in order to ensure the safe and efficient distribution of such gas to consumers and compliance with numerous Federal and State regulations, such excavation is inextricably linked with the distribution of gas.[9] See G. L. c. 164, § 105A.[10] See also *New England LNG Co.* v. *Fall River*, 368 Mass. 259, 265 (1975)

in as good repair as they were in when opened and argued that the ordinance impermissibly sought to shift maintenance costs to the plaintiff. Accordingly, the city's motion to strike this portion of the brief is denied.

[8]To the extent that the city may suggest that the Legislature was incorrect in its assumption that a street, once excavated, can be restored to its former condition, any such arguments should be addressed to the Legislature.

[9]Indeed, it appears to be undisputed that the distribution system used by Boston Gas Company consists of fifty million linear feet of pipes and mains, 99.9% of which is underground. In Newton, Boston Gas Company owns 1,512,247 linear feet of gas mains, 99.8% of which is underground. Moreover, according to information contained in the record which the city does not appear to dispute, between February 3, 1992, and July 15, 1994, the plaintiff applied for 551 permits from the city, all of which were granted. Of these, approximately sixty per cent were obtained to per- form work necessary to the safe maintenance of gas service and to ensure compliance with department regulations, which, in many

(establishing "supremacy" of G. L. c. 164, § 105A, over G. L. c. 164, § 75); *Pereira* v. *New England LNG Co.*, 364 Mass. 109, 120 (1973) (G. L. c. 164, § 105A, indicates that Legislature "intended to give, and did give . . . paramount power to the Department" to regulate and control storage, transportation, and distribution of gas).

It is true, as the city argues, that the statute does not expressly forbid the inspection process established by the city here. What the statute does prohibit is the imposition of the city's inspection costs on the plaintiff and its customers. We reiterate our conclusion in *Boston Gas Co.* v. *Somerville, supra* at 704, however, that "[t]he manufacture and sale of gas and electricity by public utilities is governed by G. L. c. 164. Given [its] comprehensive nature . . . the Legislature intended to preempt local entities from enacting legislation in this area." See *Boston Edison Co.* v. *Boston*, 390 Mass. 772, 774 (1984) (recognizing comprehensiveness of G. L. c. 164).[11] The city, of course, attempts to distinguish *Boston Gas Co.* v. *Somerville, supra*, and argues that this language in *Somerville* cannot be read so broadly as to encompass the situation now before us; to the extent that the language was meant to encompass a situation like the one before us, the city argues that it is dictum and incorrect. We disagree. Concededly, the ordinance at issue in *Somerville* was

cases, requires compliance with Federal standards. See 220 Code Mass. Regs. § 69.12 (1995), requiring compliance with 49 C.F.R. Part 192, Transportation of Natural and Other Gas by Pipeline: Minimum Safety Standards.

[10]General Laws c. 164, § 105A, provides in pertinent part: "Authority to regulate and control the storage, transportation and distribution of gas and the pressure under which these operations may respectively be carried on is hereby vested in the department."

In addition, G. L. c. 164, § 76, provides: "The department shall have the general supervision of all gas and electric companies and shall make all necessary examination and inquiries and keep itself informed as to the conditions of the respective properties owned by such corporations and the manner in which they are conducted with reference to the safety and convenience of the public, and as to their compliance with the provisions of law and the orders, directions and requirements of the department . . . ."

[11]Given our conclusion that the statute requires the plaintiff to inspect excavation sites, it is likely that the ordinance, by imposing a fee for a second inspection by city officials, is inconsistent with department regulations mandating that the plaintiff pursue a "least-cost" approach to providing gas service to its customers. See *Boston Gas Co.* v. *Somerville*, 420 Mass. 702, 704-705 (1995). We need not consider this issue, however, as it is not necessary to the disposition of this case.

more onerous in some respects.[12] However, it too regulated street and sidewalk openings, and we concluded that that ordinance was invalid. *Id.* at 704-705. Thus, in the instant case, the portion of the ordinance attributable to inspection costs, which in essence attempts to exert more control over the plaintiff than exercised by the department, may not stand.

In rejecting the city's argument that imposition of such fees is consistent with § 75, we do not agree with its contention that we have "effectively repealed § 75." We have recognized that § 75 provides limited authority to a municipality and must yield at times to the broader grant of authority given to the department. See *Boston Gas Co.* v. *Somerville, supra* at 705-706; *New England LNG Co.* v. *Fall River, supra.* Allowing the city to use § 75 to assess fees not authorized by, and indeed, inconsistent with, the statute, however, would impose an additional burden on the plaintiff, a burden which undermines the "fundamental State policy of ensuring uniform and efficient utility services to the public." *Boston Gas Co.* v. *Somerville, supra* at 706. See *New England Tel. & Tel. Co.* v. *Lowell, supra* at 834 (ordinance imposing additional burden on plaintiff which forced plaintiff to expend in particular district sums it was not required to expend elsewhere interfered with uniformity desirable in regulation of utilities throughout Commonwealth and was preempted).[13] We emphasize, however, that our conclusion

---

[12]In that case, the ordinance required the plaintiff to hire particular contractors, selected by the city, to provide patching, paving, and repair services at specified rates. *Boston Gas Co.* v. *Somerville, supra.* In addition, the ordinance required the plaintiff to use certain materials and paving techniques to repair the streets and mandated that the plaintiff's responsibility for the excavation site continue for three years beyond the final infrared treatment. *Id.* at 705.

[13]By comparing the city's ordinance with a by-law enacted by the town of Wellesley that also regulates street excavation, the interference with a uniform and efficient system of gas distribution presented by these regulations becomes clear. Indeed, according to information contained in its amicus brief, Wellesley charges an inspection and maintenance fee of $140 for street openings 150 square feet or less, and $25 for each additional 150 square feet. In addition, Wellesley charges an extended maintenance fee for excavations into streets which are less than three years old. The Wellesley by-law provides that no newly constructed or reconstructed pavement less than three years old may be cut into except in an emergency; if such cuts must be made in pavement less than one year old, the fee assessed is four times standard cost. Moreover, it appears that, since the city enacted its ordinance, more than forty municipalities have also adopted permit fees; at least five of those municipalities expressly charge fees denoted as inspection and maintenance fees. Clearly, the

that the inspection and maintenance fees charged by the city in this case are inconsistent with G. L. c. 164, § 70, and are, therefore, preempted is not based merely on the fact that the ordinance requires the plaintiff to expend sums of money.[14] Rather, it is based on the fact that the ordinance requires the plaintiff to expend money in a manner not authorized by, and indeed inconsistent with, particular provisions of the statute.

That § 70 requires the city's consent before excavating a street does not mandate the conclusion that an inspection fee is permitted. See *Wendell* v. *Attorney Gen.*, 394 Mass. 518, 524 (1985) (in considering whether by-law is inconsistent with statute, question is whether Legislature intended to deny municipality right to legislate on subject). The plaintiff has the statutory obligation to restore the street to its preexcavation condition but preexcavation or postexcavation inspection by the city at the expense of the plaintiff is not specifically or impliedly a statutory requirement.[15] Given the comprehensiveness of the statute and the remedies provided therein, we conclude that the statute does not permit a municipality to charge the fees

---

differences between the municipalities in assessing costs impedes the uniformity of gas distribution; moreover, where the system becomes less uniform, such balkanization is likely to lead to less efficient services. See *Pereira* v. *New England LNG Co.*, 364 Mass. 109, 121 (1973) (recognizing "the absolute interdependence of all parts of the Commonwealth and of all of its inhabitants in the matter of availability of public utility services").

[14]From February 3, 1992, through July 15, 1994, inspection and maintenance fees charged by the city to the plaintiff totaled $102,230.

[15]General Laws c. 164, § 70, also contemplates that an action for nuisance will lie against a gas company that fails to put all streets in as good repair as they were in prior to being opened.

Moreover, the statute also contains other remedies that may be pursued if the utility company fails to fulfil its statutory obligations. General Laws c. 164, § 105A, provides in part: "Upon the filing with the department of a written complaint of the mayor of the city or selectmen of the town where a gas company is operating, or of twenty of its consumers, either as to the manner in which or pressure at which gas is being or shall be stored, transported or distributed, the department shall . . . give a public hearing . . . and after said hearing may make such order, if any, as it may deem necessary."

In addition, G. L. c. 164, § 78, provides: "If any corporation engaged in the manufacture and sale or distribution and sale of gas or electricity violates or fails to comply with the provisions of law, or violates or fails to comply with any lawful order of the department, [the department] shall give written notice thereof to such corporation and to the attorney general."

in question.[16, 17]

Finally, the city argues that the department has enacted regulations which consider municipal inspection and permit fees as legitimate costs for gas companies which may then be recovered by the plaintiff by passing on such costs to its customers.[18] According to the city, these regulations indicate that the fees imposed by it are consistent with, and not preempted by, G. L. c. 164. The department, in its amicus brief, contends that these regulations do not indicate approval of such costs but deal with the accounting system and are only intended to provide the department with information on the operations of gas companies and to aid its review of company costs. Where the allowance of

---

[16]We recognize, as the city points out, that a city may need to inspect a site in order to determine whether it should proceed with a remedy contemplated by the statute. That the city decides to take such a step does not, however, give the city the right to pass on these costs to the plaintiff. Indeed, the city has an independent obligation under G. L. c. 84 to ensure that all its ways are in good repair. Arguments that the remedies provided by the statute are inadequate should be made to the Legislature.

[17]The city also argues that the plaintiff did not raise below its argument that the city had a statutory remedy under G. L. c. 164, § 105A, that allows the city to bring a complaint to the department regarding street openings and has moved to strike portions of the plaintiff's brief regarding this argument. We agree that the plaintiff did not expressly argue that an administrative remedy existed under G. L. c. 164, § 105A. The plaintiff did argue, however, that the ordinance "interferes with a comprehensive, unified, and exclusive statutory scheme, created by the Legislature governing the obligation of a gas company to repair street excavations" and that "the Department exercises its statutory authority over gas company operations under G. L. c. 164, § 105A, in a manner that leaves no role for further local action." Moreover, the plaintiff argued that G. L. c. 164, §§ 70 and 74, provided a municipality with remedies in the event that the plaintiff did not fulfil its statutory duties. Thus, we decline to strike portions of the brief where the plaintiff argues that the city did not utilize any statutory remedies before imposing the fees at issue, particularly where, as here, the important fact is not that the city did not pursue any potential statutory remedies prior to enacting the ordinance but the fact that the statute itself establishes a comprehensive scheme.

[18]The city points to numerous provisions in the Uniform System of Accounts for Gas Companies. For our purposes, the most relevant of these are account 367 of the gas plant accounts, which deals with an account called "Mains" and provides that municipal inspections may be included as a cost in this account, 220 Code Mass. Regs. § 50.00, gas plant accounts, account 367, item 16 (1993); and account 380, which deals with an account called "Services" and provides that municipal inspections may be included as a cost in this account, 220 Code Mass. Regs. § 50.00, gas plant accounts, § 380, item 4 (1993).

inspection fees assessed by individual municipalities is inconsistent with the statutory purpose of uniform and efficient distribution of utility services, we would be reluctant to conclude that a regulation approving such fees was valid. See generally *American Family Life Assur. Co.* v. *Commissioner of Ins.*, 388 Mass. 468, 477, cert. denied, 464 U.S. 850 (1983). However, we accept the department's interpretation of its own accounting regulations as not constituting tacit approval of the fees in question. See *Boston Police Superior Officers Fed'n* v. *Boston*, 414 Mass. 458, 462 (1993), quoting *Northbridge* v. *Natick*, 394 Mass. 70, 74 (1985) ("[a]n agency's construction of its own rules and regulations 'is one to which considerable deference is due' ").

*Administrative costs.* Finally, we consider whether a fee to reimburse the city for its costs in processing permit applications is within the contemplation of the statute. We have long held that a municipality required by statute to participate in a scheme established by statute is entitled to "cover reasonable expenses incident to the enforcement of the rules." *Southview Coop. Hous. Corp.* v. *Rent Control Bd. of Cambridge*, 396 Mass. 395, 400 (1985), quoting *Commonwealth* v. *Plaisted*, 148 Mass. 375, 382 (1889). While in the instant case the authority of a municipality is severely circumscribed, it is clear that a utility desiring to perform excavation work must seek the written consent of a municipality's governing body. G. L. c. 164, § 70. Thus, costs incurred by the municipality in granting that written permission are recoverable expenses. The plaintiff has not contested the portion of the summary judgment materials demonstrating that the $25 fee attributed to such administrative costs is reasonable.[19] The judgment of the Superior Court is reversed in part and affirmed in part; the case is remanded for

---

[19]The plaintiff also argues that the fees imposed by the ordinance constitute an unlawful tax on the plaintiff; to the extent this portion of the fee is attributable to a permit, the plaintiff does receive a benefit in the form of a written permission to dig. *Emerson College* v. *Boston*, 391 Mass. 415, 424 (1984). To the extent that the plaintiff argues that it is required to dig and cannot be deemed to pay the tax voluntarily, we point out that, where this portion of the assessment is a classic regulatory fee necessary in order to ensure that the plaintiff complies with statutory requirements regarding written permission to dig, "the element of choice is not a compelling consideration which can be used to invalidate an otherwise legitimate charge." *Nuclear Metals, Inc.* v. *Low-Level Radioactive Waste Mgt. Bd.*, 421 Mass. 196, 207 (1995). Thus, at least with respect to this portion of the charge imposed by the ordinance, it is a permissible fee, not an unlawful tax.

the entry of a judgment in favor of the plaintiff with respect to the portion of the ordinance imposing maintenance and inspection fees.

*So ordered.*