PLAINS COOPERATIVE TELEPHONE ASSOCIATION, INC., a Colorado corporation, Plaintiff–Appellee,

v.

BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF WASHINGTON, Defendant–Appellant.

No. 08CA2093.

Colorado Court of Appeals, Div. VII.

Sept. 3, 2009.

Edward L. Zorn, P.C., Edward L. Zorn, Fort Morgan, CO, for Plaintiff–Appellee.

Rothgerber Johnson & Lyons, LLP, Edward A. Gleason, Colorado Springs, CO, for Defendant–Appellant.

Guillory & Hjort, PLLC, Barry L. Hjort, Rapid City, SD, for Amicus Curiae Colorado Telecommunications Association.

Stoel Rives, LLP, Thomas W. Snyder, Denver, CO; Mesach Y. Rhoades, Denver, CO, for Amicus Curiae Qwest Corporation.

Opinion by Judge CONNELLY.

A Colorado statute strictly limits what counties may charge telecommunications providers for roadwork permits to run cable lines under public roads. Counties may impose only a "construction permit fee," which must be "reasonably related to the costs directly incurred by the [county] in providing services relating to the granting or administration of permits." § 38–5.5–107(1)(a)(II), (1)(b), C.R.S.2008.

Plaintiff, Plains Cooperative Telephone Association, Inc. (Plains), challenged Washington County's fee for permits allowing Plains to cut trenches in and then restore the roads in order to lay its underground cable. The County charged Plains not only for the administrative costs of processing the permit but also for the anticipated future costs of repairing trenched roads. We apply the plain statutory language to affirm the district court's ruling that the County overcharged Plains for its permits.

## I. Background

Plains provides telephone services in rural Colorado. The County granted Plains permits for installing underground cable to: (1) provide new services to a dairy project; and (2) upgrade services to existing customers. The permits established the conditions under which Plains could cut a "trench" across or beside County roads to lay underground cable. One condition, which is not challenged here, required Plains "to restore the roadway surface by compaction or other means to the condition of the roadway prior to the cut."

The permit fees generally are $300 "for administrative review" of each application (with each crossing of a county road deemed a separate application) *plus* a formulaically-determined amount depending on the length and width of the roadway cuts. This additional amount begins at fourteen cents "per lineal foot" (for ditches between half-an-inch and eight inches wide) and can go as high as seventy-two cents per foot (for ditches more than forty-two inches wide).

The County charged Plains more than $27,000 for the two permits. The vast majority of those fees—more than $21,000 by

Plains' calculation—resulted from the lineal-foot formula.

Plains did not challenge the costs and calculation of the administrative review components of the fees. It did, however, object to and pay under protest the additional costs determined by the lineal-foot formula.

Plains complied with both permits in cutting and restoring the roads when it installed the underground cables. In February 2006, the County stated "the work was completed to [its] satisfaction and meets the current restoration requirements of the issued permits."

After completing the installation projects, Plains made a demand on the County to refund the more than $21,000 of the permit fees based on the lineal-foot formula. When the County denied the refund, Plains filed this lawsuit.

The County defended its lineal-foot formula as a reasonable way of measuring the "anticipated repair and/or replacement costs for the county roads affected" by installation of underground cables. It offered a civil engineer's expert testimony that trench cuts displace soil and thereby weaken the road bed, shortening the expected life of roads and increasing the costs of future repairs. The engineer opined that these adverse effects cannot be remedied entirely by a contractor's restorative efforts when it closes the trench cut in the road. His report concluded that the County's "road cut permit fees and linear footage charges are justified in order to restore roads and ditches and not place this burden on the taxpayers but on the utilities that utilize the rights-of-way." The County also offered a certified public accountant's expert testimony opining that the permit fees were reasonably related to the expected costs of future maintenance of the affected roads.

The district court, following a two-day bench trial, issued a written opinion ruling in favor of Plains and ordering refund of approximately $21,000 plus interest. The opinion described "the effect of the restrictive language" in section 38–5.5–107(1)(b) as raising an issue "of first impression." The court construed this language to require that fees and charges imposed on telecommunications providers "mirror, as closely as possible, the cost of the governmental service provided—here, the granting or administration of permits." It concluded that Washington County's "lineal foot charges are improper" as a matter of law because the statute does not allow permit fees to be based on anticipated future costs of restoring roads.

## II. Discussion

The County argues that section 38–5.5–107(1)(b) does not preclude it from basing permit fees on anticipated road repair costs. Construing the statute de novo, *see Alvarado v. People*, 132 P.3d 1205, 1207 (Colo.2006), we disagree.

### A. Statutory Overview

The provision at issue here is part of Article 5.5 ("Rights–of–Way: Telecommunications Providers") of Title 38 of the Colorado Revised Statutes, §§ 38–5.5–101 to –108, C.R.S.2008. Article 5.5 was enacted two months after the Federal Telecommunications Act of 1996(FTA), 47 U.S.C. §§ 151–614. *See generally City & County of Denver v. Qwest Corp.*, 18 P.3d 748, 751 (Colo.2001).

The FTA "protects the ability of a locality to manage the public rights-of-way." *Global Network Communications, Inc. v. City of New York*, 562 F.3d 145, 152 (2d Cir.2009) (internal quotation marks omitted). It specifically allows localities to require "fair and reasonable compensation" on a neutral and nondiscriminatory basis "for use of public rights-of-way." 47 U.S.C. § 253(c); *see Level 3 Communications, L.L.C. v. City of St. Louis*, 477 F.3d 528, 532 (8th Cir.2007) (section 253(c) is a "safe harbor" for local governments).

Section 38–5.5–107 goes beyond the FTA by limiting "[p]ermissible taxes, fees, and charges" on telecommunications providers. Counties may not charge for road usage but may only impose a "street or public highway construction permit fee." § 38–5.5–107(1)(a)(II). Any such fee "shall be reasonably related to the costs directly incurred by the [county] in providing services relating to the granting or administration of permits."

§ 38–5.5–107(1)(b). The fee must also "be reasonably related in time to the occurrence of such costs." *Id.* If challenged, the county "shall have the burden of proving that the fee or charge is reasonably related to the direct costs [it] incurred." *Id.*

### B. Analysis

■ We conclude the County has failed to carry its burden of showing the lineal-foot formula is "reasonably related to the costs [it] directly incurred ... in *providing services relating to the granting or administration of permits.*" § 38–5.5–107(1)(b) (emphasis added). The costs of permit services are covered by the $300 per-application charge for what the County calls "administrative review." Including anticipated road repair costs in permit fees charges telecommunications providers more than the statute allows.

Section 38–5.5–107(1)(b) allows only a narrow type of permit fee. A "permit fee" normally defrays "the costs of services to be rendered in the examination of construction plans and specifications, and to determine that they conform to building code regulations." *City of Commerce City v. Cooper,* 198 Colo. 553, 556, 609 P.2d 106, 107 (1979); *see* 9A Eugene McQuillin, *The Law of Municipal Corporations* § 26:218, at 238 (3d ed.2007) (permit fee is "limited in amount to the cost of examination of plans, the issuance of the permit and administration of building regulations").

Indeed, by limiting fees to costs "directly incurred" for such services, section 38–5.5–107(1)(b) adopts a very narrow definition of recoverable costs. *See Bainbridge, Inc. v. Bd. of County Comm'rs,* 964 P.2d 575, 577 (Colo.App.1998) (permit fees normally allow recovery for both "direct" and "indirect" costs). We recognize some types of fees (though typically not permit fees) may be based more broadly on the societal costs of the regulated activity. *Cf. Barber v. Ritter,* 196 P.3d 238, 242 (Colo.2008) (noting that state fees were "used to subsidize the cost of governmental services provided to those charged, *or to otherwise defray the social costs of their activities")* (emphasis added); *Samis Land Co. v. City of Soap Lake,* 143 Wash.2d 798, 23 P.3d 477, 482–83 (2001) (le-gality of fee requires consideration of relationship "between the rate charged and *either a service received by the fee payers or a burden to which they contribute")* (emphasis added). But section 38–5.5–107(1)(b) plainly does not allow that broad type of fee.

Precedent supports limiting local governments issuing road trench permits to charging fees based on the costs of permit administration and not on the anticipated future costs resulting from road degradation. In *Southern California Gas Co. v. City of Santa Ana,* 336 F.3d 885 (9th Cir.2003), for example, the court invalidated as inconsistent with a utility's existing franchise a trench cut ordinance requiring an additional fee for road excavations. The court noted that "[w]hile trench cut fees are imposed incident to obtaining a permit, [the City] does not claim such fees are based on the cost of providing the permit" but "[i]nstead, the fees are designed to compensate [the City] for the 'unavoidable' loss of useful life caused by trench cuts and the additional costs incurred in repaving trenched streets." *Id.* at 891 n. 5; *see also Boston Gas Co. v. City of Newton,* 425 Mass. 697, 682 N.E.2d 1336, 1339–40 (1997) (construing statute as allowing city "to charge a fee based on its administrative costs incurred in the issuance of permits" but *not* "an upfront fee" related to "the reduction in street life caused by the excavation").

That Colorado has adopted this restrictive approach for permit fees charged to telecommunications providers is highlighted by comparing section 38–5.5–107(1)(b) to other states' statutes. *See* William Malone, *Access to Local Rights-of-Way: A Rebuttal,* 55 Fed. Comm. L.J. 251, 267–68 (2003) (discussing states' "varying approaches to compensation and other rights-of-way management issues"). In *TCG Detroit v. City of Dearborn,* 261 Mich.App. 69, 680 N.W.2d 24 (2004), for example, the court construed a now-repealed Michigan statute "provid[ing] that a local government may not exact compensation for telephone companies' access to its rights-of-ways in excess of its 'fixed and variable *costs ... in granting a permit and maintaining the right-of-ways, easements, or public places used by a provider.'*" *Id.* at 29–30 (emphasis added).

The County misplaces reliance on the supreme court's opinion in *Denver v. Qwest*, which expressly did not consider the legality of fees that Denver sought to charge telecommunications providers. 18 P.3d at 757 n. 6. Instead, it held the entire Denver ordinance was preempted by Article 5.5 because its "central mechanism" struck "at the very heart of the statutory prohibition" against requiring new authorization for previously-approved uses. *Id.* at 757 & n. 7. In rejecting Denver's constitutional challenges to Article 5.5, the court made the statements now relied on by the County, including that: Article 5.5 "permits charges for the actual costs incurred in allowing telecommunications providers to use the rights-of-way," *id.* at 758; and Denver could not "exact[ ] a fee" for use "beyond costs directly incurred by Denver," *id.* at 761. The County construes *Denver v. Qwest* to mean that there can be "no exceptions or exclusions" upon the direct costs for which a local government may recover. But the supreme court made no such statement and plainly did not decide the issue now before us.

The parties' appellate briefs debate whether Article 5.5's legislative history reveals the General Assembly's intent to allow or disallow these types of fees. We need not resolve that debate. Because the statutory language "is plain and clear, we must apply the statute as written" without resort to the legislative history. *In re 2000–2001 Dist. Grand Jury*, 97 P.3d 921, 924 (Colo.2004); *accord Vigil v. Franklin*, 103 P.3d 322, 327 (Colo.2004).

■ Counties may continue to condition permits on a requirement that telecommunications companies restore affected roads to their prior state. *See Denver v. Qwest*, 18 P.3d at 752, 757 (Article 5.5 protects local governments' ability to exercise police powers in connection with requiring construction permits). But, by limiting permit fees to administrative costs, section 38–5.5–107(1)(b) plainly precludes the County from charging additional permit fees based on a formula tied to anticipated future costs of restoring degraded roads. If in fact this statute leaves the County unable to ensure that "a street, once excavated, can be restored to its former condition, [the County's] arguments should

be addressed to the Legislature." *Boston Gas*, 682 N.E.2d at 1340 n. 8.

### III.  Conclusion

The district court's judgment is affirmed.

Judge RUSSEL and Judge J. JONES concur.