ROBERT F. GLASER, JR. vs. CHIEF JUSTICE FOR
ADMINISTRATION AND MANAGEMENT OF THE TRIAL
COURT.

Suffolk. November 4, 1993. - December 23, 1993.

Present: LIACOS, C.J., NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Chief Administrative Justice. Trial Court*, Chief Administrative Justice,
Probation officers.

The Chief Administrative Justice of the Trial Court acted correctly in con-
cluding that a candidate for a position as chief probation officer had not
met the appointment standards promulgated pursuant to G. L. c. 211B,
§ 8. [664-666]
An advisory committee hearing an appeal under G. L. c. 276, § 99, of a
candidate who had not met the standards for appointment to the posi-
tion of chief probation officer exceeded its authority in making a recom-
mendation beyond whether the prescribed appointment process was
properly applied to the applicant. [666-667]

CIVIL ACTION commenced in the Superior Court Depart-
ment on February 28, 1990.

The case was reported to the Appeals Court by *Patti B.
Saris*, J., on a statement of agreed facts. The Supreme Judi-
cial Court on its own initiative transferred the matter from
the Appeals Court.

*David W. Downes* for the plaintiff.
*Jean Strauten Driscoll* for the defendant.

GREANEY, J. We transferred this case to this court on our
motion to decide whether the Chief Administrative Justice of
the Trial Court properly rejected the appointment of the
plaintiff, Robert F. Glaser, Jr., to the position of chief proba-
tion officer of the South Boston Division of the District Court

**660**                                                416 Mass. 659

Glaser v. Chief Justice for Administration & Management of the Trial Court.

Department (South Boston court).[1] We conclude that the Chief Administrative Justice acted correctly in concluding that the plaintiff had not met the appointment standards promulgated pursuant to G. L. c. 211B, § 8 (1992 ed.).

The facts have been agreed on. On or about March 1, 1989, the Chief Administrative Justice promulgated Administrative Order No. 4 (Order No. 4), pursuant to G. L. c. 211B, § 8 (1992 ed.).[2] Order No. 4 set out, among other things, procedures for screening and qualifying candidates

---

[1]Chapter 379 of the Acts of 1992 extensively revised G. L. c. 211B, the law governing the administration of the Trial Court. The revision includes a provision which establishes the position of Chief Justice for Administration and Management in place of the Chief Administrative Justice. St. 1992, c. 379, § 69. We have named the Chief Justice for Administration and Management as the defendant in this case because he is the party against whom any relief would be ordered. All the events in the case, however, involve the Chief Administrative Justice, and the applicable law is the provisions of G. L. c. 211B, prior to its amendment by c. 379 of the Acts of 1992.

[2]General Laws c. 211B, § 8 (1992 ed.) (effective until Feb. 12, 1993), provided, in relevant part, as follows:

"There shall be an advisory committee on personnel standards of which the chief administrative justice of the trial court shall be chairman, consisting of the chief administrative justice of the trial court, the administrative justices of the superior, land, housing, probate and family, Boston municipal, juvenile and district court departments, a clerk of courts, a district court clerk and a register of probate, all of whom shall be designated by said justices, and the commissioner of probation.

"The committee shall advise the chief administrative justice who shall establish and promulgate standards for the appointment, performance, promotion, continuing education and removal of all personnel within the trial court, except judges, clerks and registers of probate, and shall furnish copies of such standards to all divisions or places for holding sessions within the department of the trial court.

"Any appointment that is governed by standards promulgated under the provisions of this section shall forthwith be certified in writing for compliance with such standards to the office of the chief administrative justice. The chief administrative justice shall have the power to reject any such appointment within fourteen days after receipt of the certification of compliance by the appointing authority but such power to reject any such appointment shall be limited to non-compliance with the standards for appointment."

416 Mass. 659                                                    661

Glaser v. Chief Justice for Administration & Management of the Trial Court.

for the position of chief probation officer (CPO).[3] The Order was distributed to the administrative justices of the trial court and to the commissioner of probation.

The plaintiff worked as a probation officer in the South Boston court. In October, 1988, the position of CPO became vacant in that court. Due to budget constraints, notice of the vacancy was not posted until May, 1989. Subsequently, in accordance with the Order and applicable law, the commissioner of probation authorized posting for the vacant CPO position in the South Boston court. A committee was established to conduct interviews and to test applicants who met the initial requirements set out in the trial court's personnel policies and procedures manual.

After posting a notice of vacancy for the position, the committee interviewed and administered a skills test to the plaintiff and three other candidates. Of the four candidates, only one attained a "qualified" score on this evaluation.[4] Consequently, this candidate's name was presented to the then-presiding justice of the South Boston court in accordance with Order No. 4.[5]

---

[3]Administrative Order No. 4, and its attachments, provide for the assessment of the needs of probation offices, establish a recruitment process, and establish a process for evaluating candidates for the position of chief probation officer, including a review of qualifications, a personal interview and a practical exercise. The various components of the evaluation are weighted to produce a final grade based upon a 100 point system. The order provides that a candidate must receive an average grade of eighty or better or be recommended to the respective appointing authority in accordance with G. L. c. 276, § 83, and the trial court personnel policies and procedures manual. The order is not exclusive, but is to be considered in addition to the requirements set forth in the trial court personnel policies and procedures manual.

[4]The candidates' final grades were based on the prescribed 100 point system, with fifty points allocated to the personal interview and fifty points allocated to the practical exercise. The points awarded by individual committee members to each applicant were averaged to produce a single grade for each applicant. To be deemed "qualified" a candidate had to receive an average grade of eighty or better. The plaintiff scored seventy-three.

[5]General Laws c. 276, § 83 (1992 ed.), provides in pertinent part, "[T]he justice of each . . . district court . . . may appoint such male and

The presiding justice, however, wished to consider all four candidates. He requested the applications and résumés of the plaintiff and the other three candidates who were considered and tested by the interview committee. After reviewing this information and interviewing the four candidates, the presiding justice decided to appoint the plaintiff as the CPO. On July 19, 1989, the presiding justice requested approval of the plaintiff's appointment from the commissioner of probation despite the plaintiff's lack of "qualification" status.

The commissioner of probation responded on August 2, 1989, with a letter on behalf of the Chief Administrative Justice, informing the presiding justice that his choice of the plaintiff for the CPO position would not be approved because the plaintiff's failure to obtain a "qualified" evaluation score made the plaintiff ineligible under Order No. 4. During the intervening two weeks between the plaintiff's appointment and the commissioner of probation's recision of the appointment, the plaintiff claims to have assumed and exercised the duties of the CPO. On August 8, 1989, the commissioner of probation, again acting on behalf of the Chief Administrative Justice, informed the plaintiff by letter that he had failed to obtain qualification status and, therefore, was ineligible for the position of CPO under Order No. 4.

The plaintiff, as well as the other two candidates who did not obtain a qualifying score, filed an appeal under G. L. c. 276, § 99 (1992 ed.), of their disqualification by the interview committee with the advisory committee on personnel standards (advisory committee). The plaintiff also appealed the rejection of his appointment to the position of CPO. Af-

---

female probation officers as they may respectively from time to time deem necessary for their respective courts . . . ."

Section 83 indicates that "[t]he phrase 'probation officer' . . . be construed to include chief probation officer."

Section 83 goes on to provide that "any . . . appointment [of a probation officer] shall be reviewed by the chief administrative justice for compliance with the standards promulgated under [G. L. c. 211B, § 8]. If the chief administrative justice finds that any such appointment does not comply with said standards he shall rescind the appointment."

416 Mass. 659 663

Glaser *v.* Chief Justice for Administration & Management of the Trial Court.

ter a hearing on the appeals, the advisory committee issued "Findings and Conclusions" noted, in relevant part, below.[6]

The Chief Administrative Justice next ordered that the hiring process for the CPO position in the South Boston court begin anew. Accordingly, the commissioner of probation established a new interview committee which proceeded to interview and test nine candidates, including the plaintiff, for the CPO position. Subsequently, the commissioner of probation informed the new presiding justice of the South Boston court (the presiding justice who had purported to appoint the plaintiff having retired from the bench) which of the nine candidates reviewed by the interview committee had attained the minimum score of eighty points necessary to be deemed a "qualified" applicant. The plaintiff, having scored only sixty-four points, again failed to achieve qualification status.

The commissioner of probation notified the plaintiff that the interview committee was not recommending him for appointment to the position of CPO. On or about April 13, 1990, the new presiding justice appointed one of the qualified candidates as the CPO of the South Boston court. The Chief Administrative Justice approved the appointment.

The plaintiff then commenced this action in the Superior Court requesting a declaration of rights and relief in the nature of mandamus. Cross motions for summary judgment

---

[6]"1. THAT the Interview Committee's recommendations under Trial Court Administrative Order No. 4 is [*sic*] advisory in nature and does not disqualify the appointment of any candidate for Chief Probation Officer who is initially qualified under the requirements of the Trial Court's Personnel Policies and Procedures Manual;

"2. THAT upon its review of the record and qualifications of the three [candidates — the plaintiff and the other two candidates] — all three are indeed 'qualified' for appointment under the presently effective Chief Probation Officer job description contained in the Trial Court Department Personnel Policies and Procedures Manual;

"3. THAT a vacancy still exists in the Chief Probation Officer position in the South Boston Division of the District Court Department and [the Advisory Committee] advises that the hiring process should begin *de novo* and that candidates should be solicited for the position which should include the previous four applicants and any other probation officer who is qualified to be so appointed."

were filed under Mass. R. Civ. P. 56, 365 Mass. 824 (1974), but not acted on. Instead, the parties agreed on the relevant facts and documents, and a judge of the Superior Court reported the case to the Appeals Court pursuant to G. L. c. 231, § 111 (1992 ed.), and Mass. R. Civ. P. 64, 365 Mass. 831-832 (1974).

1. The Chief Administrative Justice acted within his authority in not approving the plaintiff's appointment as the CPO. Order No. 4 reads, in its entirety, as follows.

"This order is promulgated to bring about a more coordinated approach to the administration of the Probation Service of the Commonwealth and to meet the requirements of the Trial Court in promoting a comprehensive and uniform method for assessing the needs of probation offices and for guiding appointing authorities in the filling of the position of Chief Probation Officer.

"After consultation with the Administrative Justices, the Commissioner of Probation and other interested parties, a procedure has been established for the assessment of the needs of the several Departments of the Trial Court and for recruiting candidates, when required, for the filling of the position of Chief Probation Officer. Said procedure is incorporated by reference herein as an appendix to this order.

"It is expected that the uniform procedure for ascertaining the needs of the probation service will assist the Departments in their efforts to modify existing practices where appropriate and to reassess the role and functional responsibilities of their respective probation offices. This is necessary to help meet the increasing burden placed upon the Courts brought about by the myriad of complex legal and societal problems that must be addressed on a daily basis.

"The appointment of a Chief Probation Officer is the responsibility of the designated judicial authority in accordance with the provisions of G. L. c. 276, § 83. The appointment process shall, in addition to the provision

416 Mass. 659                                          665

Glaser v. Chief Justice for Administration & Management of the Trial Court.

of this order, be subject to the Trial Court Personnel Policies and Procedures Manual promulgated pursuant to G. L. c. 211B, § 8.

"The Commissioner of Probation, pursuant to the provisions of G. L. c. 276, § 99, shall have the responsibility for assessing the needs of probation offices and assisting appointing authorities in this effort to maintain and enhance the quality and performance of the Probation Service of the Commonwealth."

The procedure referred to in the second paragraph of the Order sets out in seven pages various steps that are to be followed as part of a "Uniform Procedure for Assessing Needs of Probation Officers and Assisting Appointing Authorities in the filling of the Position[s] of Chief Probation Officers."

There can be no question that the Order, and related procedures, were expressly intended by the Chief Administrative Justice to satisfy the statutory obligation imposed on him by the second paragraph of G. L. c. 211B, § 8, to "establish and promulgate standards for the appointment, performance, promotion, continuing education and removal of all personnel within the trial court." See note 2, *supra*. Where applicable, these standards are to be implemented and monitored by the commissioner of probation under G. L. c. 276, § 99. By their express terms, the Order and related procedures were meant to create an open, fair, and "uniform" process for making an appointment to the CPO position. A candidate who did not meet the standards could not be validly appointed to the position.

In reaching this conclusion, we reject the contention that the use of the word "guiding" in the Order made the standards advisory. To view the appointment process set out in the Order as advisory only would have rendered nugatory (a) the entire concept of uniform standards for appointment contemplated by G. L. c. 211B, § 8; (b) the requirement in G. L. c. 276, § 83, that "any . . . appointment [of a probation officer] shall be reviewed by the chief administrative jus-

tice of the trial court for compliance with the standards promulgated under [G. L. c. 211B, § 8]"; and (c) the further clear directive in § 83, that "[i]f the chief administrative justice finds that any such appointment does not comply with such standards he shall rescind the appointment." See note 5, *supra*. Such an interpretation would permit presiding justices to make arbitrary appointments notwithstanding the Legislature's concern that appointments to high-level positions within the judicial system's probation service be based on candidates' compliance with clearly stated job requirements.

2. We give no consideration to the advisory committee's view that any recommendation made under Order No. 4 is purely advisory. This view appears to have been based on a distinction made by the advisory committee between appointment standards set forth in the trial court personnel policies and procedures manual[7] and the appointment standards of Order No. 4.[8] Any such distinction is not a proper one. Both the requirements of the trial court personnel policies and procedures manual and Order No. 4 constitute appointment standards established by the Chief Administrative Justice pursuant to G. L. c. 211B, § 8. All of the requirements of the manual and the Order must be satisfied. General Laws c. 276, § 83, directs that the Chief Administrative Justice rescind any appointment made in violation of the requirements.

The advisory committee was not empowered to rule on the legal effect of Order No. 4. Its consideration of the appeals under G. L. c. 276, § 99, should have been limited to whether the appointment process set forth in that Order was properly applied to the applicants. Thus, the plaintiff's ap-

---

[7] As previously noted, the advisory committee stated on this point that the plaintiff is "indeed 'qualified' for appointment under the presently effective Chief Probation Officer job description contained in the Trial Court Department Personnel Policies and Procedures Manual."

[8] Also as previously noted, the advisory committee stated on this point that "the Interview Committee's recommendations under Trial Court Administrative Order No. 4 is [*sic*] advisory in nature and does not disqualify the appointment of any candidates."

peal should have addressed whether he was properly scored by the interview committee. It is undisputed that the plaintiff failed to obtain the requisite score to be "qualified" for the appointment pursuant to Order No. 4. The advisory committee's opinion that the plaintiff was nevertheless qualified exceeded its role in the appointment process.

It follows from what has been said that the plaintiff was not entitled to consideration for the CPO position at the South Boston court. The defendant's motion for summary judgment is to be allowed, and an appropriate declaratory judgment is to be entered consistent with this opinion.

*So ordered.*