07-5184-cv
Global Network Communications, Inc. v. City of New York

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: October 16, 2008                    Decided: April 8, 2009)

Docket No.  07-5184-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

GLOBAL NETWORK COMMUNICATIONS,
INC.,

*Plaintiff-Appellant*

v.

CITY OF NEW YORK *and* CITY OF NEW YORK
DEPARTMENT OF INFORMATION TECHNOLOGY
AND TELECOMMUNICATIONS

*Defendants-Appellees*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before: McLAUGHLIN, LEVAL, and POOLER, *Circuit Judges*.

Plaintiff, Global Network Communications, Inc., appeals from the district court's grant of summary judgment in favor of defendants in an action contesting the City of New York's denial of plaintiff's application for a franchise to operate public pay telephones on public property.  The district court rejected the plaintiff's allegation that the defendants' actions (1) violated Section 253 of the federal Telecommunications Act, 45 U.S.C. § 253, (2) were preempted under federal and state law, and (3) violated the plaintiff's constitutional rights under the First and Fourteenth Amendments

and the Contracts Clause.  The court of appeals (Leval, *J.*) affirms the grant of summary judgment.

JOSEPH P. GARLAND, Lifshutz & Lifshutz, P.C., New York, NY, for *Plaintiff-Appellant*.

BRUCE REGAL, Assistant Corporation Counsel (John Hogrogian, Pamela Seider Dolgow, and Diana M. Murray, Assistant Corporation Counsels, on the brief) *for* Michael A. Cardozo, Corporation Counsel of the City of New York, New York, NY, for *Defendants-Appellees*.

LEVAL, *Circuit Judge*:

Plaintiff, Global Network Communications, Inc. ("Global") appeals from an order of the United States District Court for the Southern District of New York (Stanton, *J.*) granting summary judgment in favor of defendants, the City of New York ("City") and its Department of Information Technology and Telecommunications ("DoITT").  Global's lawsuit results from the City's denial of Global's application for a public pay telephone ("PPT") franchise on the basis of its ties to organized crime, its past history of fraud, and its debts and arrears.  The district court held that the City's denial of Global's application, as well as the City's regulatory scheme for PPTs, did not violate the federal Telecommunications Act of 1996 ("TCA"), 47 U.S.C. § 253.  The district court further held that the City's regulatory scheme for PPTs was not preempted by state or federal law.  Finally, the court dismissed Global's claims that the City's actions violated its constitutional rights.

We agree with the district court's conclusion that the City's actions fall squarely within the safe harbor provisions of Section 253(c) of the TCA, which provide local government with the authority to manage public rights-of-way and to require fair and reasonable compensation from

telecommunications providers. Global furthermore has failed to identify any federal or state law that preempts the City's actions, and its constitutional claims are without merit. Therefore, we affirm the summary judgment of the district court.

**BACKGROUND**

Since 1959, New York City has required a license as a precondition to the installation or operation of a PPT on city-owned and city-managed property, including sidewalks. Prior to 1995, the City did not enforce this requirement rigorously. Several telecommunications providers, including Global, installed PPTs on City sidewalks and on the sides of buildings intruding onto public rights-of-way without having obtained the required license. In 1995, however, the City passed Local Law 68, which established the regulatory scheme in effect today. That law provides that "[n]o public pay telephone shall be installed . . . [on] any street or other inalienable property of the city without a permit." N.Y. City Admin. Code § 23-402. Permits are issued only to telecommunications providers who have been granted a franchise to operate PPTs by the City's DoITT. *Id*. § 23-403(a)(1). Local Law 68 also offered a conditional amnesty procedure whereby previously installed unlicensed PPTs could remain in operation if the owner obtained a franchise, identified its pre-existing PPTs on a registry submitted to the DoITT, and paid the City interim fees equal to $75 per PPT per year, and the Commissioner lodged no objection to the continued operation of such phones on City-owned property. N.Y. City Local Law 68, § 6(a), (d) (1995). Any company whose application for a franchise was denied by the Commissioner's decision not to approve a franchise for such owner, was obliged within 30 days either to remove its unlicensed PPTs or sell them to a company that possessed a franchise. *Id*. § 6(c). Local Law 68 applies only to City property; PPTs

3

on private property are not subject to the City's regulatory scheme. *See* N.Y. City Admin. Code § 23-402.

On May 30, 2000, the DoITT rejected Global's initial request for a franchise on the ground that its CEO and sole shareholder, Ronald Massie, is an associate of the Bonnano organized crime family accused of loan sharking and money laundering through the company. Massie subsequently pleaded guilty to a federal indictment charging him with loan sharking, mail fraud, and bank fraud. He later testified that Global derived 20 to 30 percent of its business from locations that were chosen or secured by members of the Bonnano crime family. He admitted to using connections to the Bonnano crime family in order to secure PPT locations, and property owners reported that these individuals threatened and intimidated them into accepting the PPTs. Massie also admitted that Global had defrauded the owners of the properties on which Global had installed its PPTs out of $1.8 million in commissions.

Global challenged the franchise denial through a special proceeding pursuant to Article 78 of the New York Civil Practice Laws and Rules. On July 1, 2002, the New York Supreme Court (Gans, *J.*) vacated and remanded the matter to the DoITT for further proceedings because the denial implicated Global's liberty and property interests and Global therefore should be afforded "an opportunity to respond to the allegations regarding [Massie's] conviction and its relationship to the operation of the business." *Global Network Commc'ns, Inc. v. Dobrin*, No.120402/00, slip op. at 9 (N.Y. Sup. Ct. July 1, 2002).

After conducting further proceedings in which Global was afforded the opportunity to respond, the DoITT again rejected Global's franchise request. In its March 11, 2005 determination,

4

the DoITT explained:

> [T]here are multiple independent bases for not proposing the award of a franchise to Global . . . : (1) Global established a significant part of its business through its use of organized crime soldiers; (2) Global has defrauded property owners who authorized use of property for Global PPTs; and (3) Global has been repeatedly delinquent in the payment of registry fees and thus cannot be reliably trusted to timely pay franchise compensation and also has significant unpaid fines related to its payphone operations that remain payable to the City.

The DoITT also specifically noted that "even if Massie did divest himself more fully from Global [than merely withdrawing from day-to-day operations], the nature of the City's justifiable concerns about Global would not be adequately resolved" because of "the intimate involvement of Global itself with organized crime" and "the fact that Global has failed to timely pay fines owed to the City and has repeatedly been late in its registry payments."

Global again challenged the Commissioner's determination through an Article 78 proceeding. In a decision dated November 28, 2005, the New York Supreme Court (Feinman, *J.*), denied Global's petition on the merits. The court held that the DoITT had lawfully exercised its discretion in its March 11, 2005 decision and Global's due process rights had not been violated. *Global Commc'ns, Inc. v. Menchini*, No. 109531/05 (N.Y. Sup. Ct., Nov. 28, 2005). Global failed to perfect an appeal.

Global filed its complaint in this lawsuit on October 7, 2003, and amended its complaint on July 1, 2004, setting forth eleven causes of action. The first five claims allege that the City's PPT regulatory scheme and its denial of a PPT franchise to Global violate the TCA, 47 U.S.C. § 253. The sixth and seventh claims allege that the City's legal framework is preempted by both existing state

5

law and federal law.[1]  The remaining claims allege violations of Global's constitutional rights and seek damages, costs, and attorney fees, pursuant to 42 U.S.C. §§ 1983 and 1988.[2]

The district court, in a decision dated June 9, 2005, granted the defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  *Global Network Commc'ns, Inc. v. City of New York*, 373 F. Supp. 2d 378 (S.D.N.Y. 2005).  The court ruled that the City's denial of Global's application for a franchise fell within the safe harbor exception of Section 253(c) of the TCA, which provides the City with the authority to manage the public rights-of-way and require fair and reasonable compensation.  It also dismissed all of Global's claims relying on preemption by state and federal law, as well as Global's claims of constitutional violations.

---

[1] Global contends that state law preemption applies because the City's regulatory scheme violates New York State Public Service Law § 90(3)(1).  Section 90(3)(1) prohibits certain forms of regulations of PPT service providers (*e.g.*, supervision and investigation into the general condition of franchisees; pre-approval of any assignment, transfer, lease, contract or agreement affecting PPT franchises).   Global argues that the City's scheme attempts to impose such regulations, notwithstanding Section 90(3)(1)'s express prohibition.

Global also argues that federal preemption applies because of 47 U.S.C. § 276 which states that FCC regulations trump any inconsistent local requirements regarding payphone services.  It contends that the City's regulatory scheme is inconsistent with 47 C.F.R. § 64.1330(a), an FCC regulation mandating that states review and remove regulations that impose market entry or exit requirements.  Global asserts that the City's franchise and permit schemes impair both entry and exit from the City's PPT market.

[2] Global asserts three allegations of constitutional violations: (1) the City, by refusing to grant Global a franchise and by ordering it to sell or remove its PPTs, deprived Global of its property without reasonable compensation and due process of law in violation of the Fourteenth Amendment; (2) the City has substantially impaired Global's rights under its contracts with third parties in violation of the Contracts Clause; and (3) the City has violated Global's right of free speech as guaranteed by the First Amendment by refusing to allow Global to place advertising on curb-line PPTs.

6

On appeal, this court vacated the judgment and remanded on the ground that the district court erred in "consider[ing] matters outside plaintiff's complaint" in granting a motion under Rule 12(b)(6).[3] *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006). We ruled that the district court should have converted the defendants' Rule 12(b)(6) motion into a Rule 56 motion for summary judgment and given the plaintiff an opportunity to contest the matter upon which the defendant's motion relied. *Id*. at 158. We also stated that "in remanding on procedural grounds, we express no opinion regarding the correctness of the trial court's rulings on the merits, and it may well be that upon a motion for summary judgment the court will reach the same conclusion as it did initially." *Id*. at 156.

On remand, the defendants moved for summary judgment, and the district court granted the motion. *Global Network Commc'ns, Inc. v. City of New York*, 507 F. Supp. 2d 365 (S.D.N.Y. 2007). The district court ruled that the City's denial of Global's PPT franchise "fits comfortably within [the] safe-harbor exception" of Section 253(c) of the TCA. It reasoned that inherent within the City's right to require compensation is "the reasonable expectation that its compensation will be paid accurately in full, on time, and without criminal involvement or fraud" and found that the evidence supported DoITT's determination that it could not "trust Global to pay the City's compensation in [a timely or honest] manner." *Id*. at 372. The court rejected Global's argument that the City's actions were discriminatory and therefore not protected by the safe-harbor exception. It also rejected

---

[3] The inappropriately considered matters included Massie's testimony in an unrelated criminal proceeding and the DoITT's determination of March 2005 that Global could not be expected to pay its obligations to the City in a timely or honest manner.

Global's claims that the City's regulations are preempted by state and federal law. Finally, the district court denied all of Global's federal constitutional claims. This appeal is taken from that ruling.

**DISCUSSION**

We review an award of summary judgment *de novo*, and will uphold the judgment if the evidence, viewed in the light most favorable to the party against whom it is entered, demonstrates that there are no genuine issues of material fact and that the judgment is warranted as a matter of law. *Rubens v. Mason*, 527 F.3d 252, 254 (2d Cir. 2008). We find that the district court correctly granted summary judgment in favor of the defendants on all eleven causes of action.

**I. Section 253 of the Telecommunications Act**

Global's major argument on appeal asserts that the City's franchise denial violated Section 253 of the TCA. Section 253(a) provides that "[n]o State or local statute or regulation . . . may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 45 U.S.C. § 253(a). When regulating telecommunications service providers, a state or local authority must bear in mind that "[a] major purpose of the [TCA] was to end local telephone monopolies and develop a national telecommunications policy that strongly favored local telephone market competition." *Global Naps, Inc. v. Verizon New England, Inc.*, 454 F.3d 91, 94 (2d Cir. 2006).

The TCA does not altogether deny states and localities the ability to regulate telecommunication services. On the contrary, Section 253 provides for a number of "safe harbor" exceptions for states and local governments to establish regulatory requirements. Among the "safe

8

harbor" exceptions is a provision authorizing state and local governments to regulate telecommunication services on public property and to collect compensation for its use, if certain parameters are observed. Section 253(c) provides:

> Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

45 U.S.C. § 253(c).

The City's actions in this case fall within this "safe harbor" exception. The statutory grant of authority to "manage the public rights-of-way" encompasses the right to reject an applicant on the basis of its affiliation with organized crime, especially upon a demonstrated record of operating the facilities fraudulently, or otherwise in violation of law, with reliance on organized crime to further its business interests. We conclude that the City's refusal to grant Global a franchise to operate on public rights-of-way on the basis of this past history is fully within the scope of the authority provided by Section 253(c).

Furthermore, the authority under § 253(c) to collect fair and reasonable compensation from telecommunications service providers operating on City property implies authority to deny a permit to entities which have demonstrated lack of financial responsibility and have practiced fraud to evade their financial obligations. Global has an undisputed past history of defrauding other parties with whom it contracted to operate PPTs on their property and being delinquent on paying fees owed to the City. The City undoubtedly had a legitimate concern about its ability to collect the compensation to which it is entitled. We conclude that the City's refusal to grant Global a franchise on the basis

9

of this concern is authorized by the "safe harbor" exception of Section 253(c).

Global argues that the City cannot claim the benefit of the "safe harbor" exception because it has not awarded PPT franchises in a "competitively neutral and nondiscriminatory" manner as required by Section 253(c). To support this contention, Global points to instances in which the City has granted franchises to other entities which had engaged in illegal activity, alleging that in light of these other franchise grants, the denial of Global's application constitutes discriminatory treatment, which disqualifies the City from the Section 253(c) "safe harbor" exception. However, as the district court noted, none of these instances Global cites raised concerns of comparable gravity. *Global*, 507 F. Supp. 2d at 373. Because Global's criminal history is of a different and more serious order than those of the other companies that were granted PPT franchises, the district court was justified in concluding that the City's denial of Global's franchise was within the scope of § 253(c)'s safe harbor.

Global contends that our decision in *TCG New York, Inc. v. City of White Plains*, 305 F.3d 67 (2d Cir. 2002), "compels the conclusion that the City's laws, regulations, and requirements regulating the provision of telecommunications service via PPTs violate" the TCA. We disagree. Our reasons in *TCG* for invalidating aspects of the White Plains ordinance have no bearing on the present case.

In *TCG*, we found that conditions imposed by White Plains in granting a franchise had "the effect of prohibiting the ability of an[] entity to provide . . . telecommunications service," and thus would violate § 253(a), unless they fell within the "safe harbor" exception provided by § 253(c). *Id.* at 76-77. As to various provisions of the White Plains ordinance, we ruled that they did not come

10

within the boundaries allowed by the safe harbor. While the safe harbor provision allows a locality to charge "fair and reasonable compensation . . . for use of public rights-of-way," the compensation charged must be on a "competitively neutral and nondiscriminatory basis." 47 U.S.C. § 253(c). Because White Plains charged TCG a percentage of its gross revenues, but did not impose the same charge on another franchisee, we found that the charge failed to satisfy the requirement of nondiscrimination. *TCG*, 305 F.3d at 79. Other aspects of White Plains's regulatory scheme were also not protected by the safe harbor because they sought to regulate matters beyond the proper scope of its authorized regulatory power. Section 253(c) essentially protects the ability of a locality "to manage the public rights-of-way." Certain provisions of the White Plains scheme were designed not to regulate use of the public right-of-way but rather to regulate telecommunications. We ruled, for example, that White Plains exceeded the boundaries of its safe harbor when it required prior approval of placement of telephones on *private* land, when it asserted the right to refuse a franchise on the basis of *any* factor which the City deemed to be in the public interest, and when it required a franchisee to waive the right to challenge the City's imposition of illegal conditions. *Id*. at 81-82. We therefore ruled that White Plains's regulatory scheme violated § 253.

That ruling is of no comfort to Global. As for the aspects of the ruling which depended on the conclusion that White Plains was undertaking to regulate telecommunications beyond the scope of its lawful authority to regulate the use of the public rights-of-way, those have no bearing on any ruling in this case. New York City's denial of Global's franchise application is based only on the City's right under § 253(c) to regulate public rights-of-way. And as for the finding that the imposition of a fee on TCG, but not on one of its competitors, failed the nondiscrimination

11

requirement of the safe harbor, this also is of no help.  As explained above, the City's reasons for rejecting Global's application while accepting others were reasonable and nondiscriminatory.

Finally, the district court correctly refused to adjudicate Global's claims that several provisions of the City's regulatory scheme, including advertising restrictions, violate the TCA.  The provisions noted by Global affect only entities operating under a license, and Global, which had no license to operate, was not affected by them.  It therefore lacked standing to challenge them.  *Cf. Schisler v. Sullivan*, 3 F.3d 563, 566 n.2 (2d Cir. 1993) (ruling that parties that have received full relief and will not be affected by the regulations lack standing).

## II.  Preemption by Federal and State Law

Global argues that the City's regulatory scheme is preempted by both federal and state law. These arguments are without merit.  The district court dismissed Global's state law preemption claim, holding that Global failed to make a showing that the New York State Public Service Law ("NYSPSL") limits the City's authority to require compensation for the use of the public rights-of-way.  On appeal, Global argues that the district court erred by failing to consider its claim that the City's actions are preempted by Section 99(2) of the NYSPSL which limits the authority to require pre-approval of transfers and assignments affecting PPT franchises.  We find no error in the district court's ruling.  First, Section 99(2) addresses only pre-approval of transfers and assignments; the district court was correct in finding that Section 99(2) does not limit the City's authority to require compensation for the use of public rights-of-way.  Second, Global's rights with respect to transfers and assignments are unaffected by the City's actions.  Global has no franchise right to transfer or assign.  As for its PPT equipment itself, the City has not interfered with Global's opportunity to sell

12

it.[4]

Global's claim of preemption by federal law is based on Section 276 of the TCA, which provides that regulations issued by the Federal Communications Commission (FCC) preempt any inconsistent state requirements. 47 U.S.C. § 276(c). Global argues that the City's regulatory scheme is inconsistent with an FCC regulation, 47 C.F.R. § 64.1330(a), which mandates the removal of any "regulations applicable to payphones and payphone service providers that impose market entry or exit requirements." The district court ruled that "[a]n isolated refusal to deal with an applicant known for payment defaults and the defrauding of payees is not a 'regulatory barrier to entry and exit'" of the type contemplated by the FCC regulation. *Global*, 507 F. Supp. 2d at 374. We agree.

## III. Constitutional Claims

Finally, the district court correctly dismissed all of Global's federal constitutional claims. First, Global does not challenge on appeal the district court's ruling that the City's actions did not violate the Contracts Clause, U.S. Const. art. 1, § 10. *Id*. at 376. Second, the district court correctly found no violation of Global's right to due process as Global was presented with numerous and adequate opportunities, of which it availed itself, to present its case before the DoITT. Third, the district court properly denied Global's First Amendment claim alleging violations of its right to

---

[4] Global's rights are only with respect to the PPT equipment itself. Because it lacks a franchise, Global has no rights with respect to specific locations on City property or on building lines affecting the public rights-of-way. Global is free to transfer or assign its equipment to any entity regardless of whether that entity has a franchise; however, if the transferee does not have a franchise, it, like Global, will be legally obligated to remove the PPT equipment from City property and building lines intruding upon the public rights-of-way.

13

provide truthful commercial speech and non-commercial speech on its PPT installations because (1) "Global is not entitled to have PPT installations on the City's public rights-of-way, so the question of what advertising it could place on such installations (if it had them) does not arise" and (2) Global fails to present any evidence to support its contention that in denying Global's franchise application, the City acted with retaliatory intent. *Id*. at 375.

**CONCLUSION**

The district court's order granting summary judgment in favor of the defendants is affirmed.[5]

---

[5] This appeal was heard before this panel in tandem with a companion appeal under docket number 08-0802-cv. In a separate summary order, we dismiss Global's appeal in the companion case as moot as a result of the resolution of this appeal.

14